Filed 12/16/21 Oldfield v. Pulver CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| DAVID OLDFIELD,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID ERIC PULVER,<br><br>    Defendants and Appellant. | 2d Civ. No. B307849<br>(Super. Ct. No. 19CV05202)<br>(Santa Barbara County) |

David Oldfield and David Eric Pulver have known each other for decades. A few years after a contentious encounter at a 7-Eleven, they met at the Cold Spring Tavern (Tavern) in Santa Barbara. During a fight, which also involved James Robert Anderson, Oldfield threw Pulver into a creek bed. When Pulver emerged from the creek bed, he hit Oldfield over the head with a tree branch. Pulver claimed Oldfield punched him first, but Oldfield testified he was being restrained by a third party. Oldfield suffered a concussion and traumatic brain injury.

The trial court granted Oldfield's petition for a three-year civil harassment restraining order against Pulver (Code of Civ. Proc., § 527.6),[1] but observed "that the conduct of all of these parties is pretty reprehensible, and it reminds me of adolescent, junior high boys.  And given the ages of the parties involved, certainly, they should have been exercising more maturity and better judgment than has occurred . . . ."

Pulver contends the trial court erred in issuing the restraining order because he acted in self-defense and in defense of others, and because there was no evidence of a threat of future harm.  We affirm.

FACTUAL BACKGROUND

Oldfield met Pulver through a mutual friend.  Oldfield would "hang out" at Pulver's upholstery shop and sometimes do odd jobs to earn extra money.  He stopped going to the shop about 10 years before the fight occurred.

A few years earlier, Oldfield saw Pulver at a 7-Eleven.  Pulver testified that he invited Oldfield back to his shop, and that Oldfield was rude to him.  Oldfield testified that Pulver called him "Oafie," which he found offensive.  Oldfield refused the invitation and walked off.

James Robert Anderson met Oldfield through Pulver.  In 2018, Anderson sold a motorcycle to Oldfield.  Thereafter, the two had an ongoing, unresolved conflict regarding the motorcycle's mileage.  Oldfield filed a complaint with the Sheriff's Office alleging Anderson's harassment of him.  Oldfield was frightened of Anderson and bought a can of pepper spray for protection.

Anderson typically goes to the Tavern every Sunday.  On August 25, 2019, he went there to meet friends.  Anderson went

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

2

up to the "smoking circle" when he heard Oldfield was there. Anderson confronted Oldfield when he was about 15 feet away from him. He called Oldfield by his street name and asked him if he had called the cops on anybody that week. According to Oldfield, Anderson said he was going to kick his ass. When Anderson was about 12 feet away, Oldfield stood up and pulled the can of pepper spray out of his pocket. He pointed it at Anderson and told him to back away. Anderson testified that Oldfield said he was going to spray him.

Although Pulver did not know what was happening between Anderson and Oldfield, he "took it upon [himself] to defend [himself] and [Anderson] from an attack." What happened next is disputed. Pulver testified that he "disarm[ed]" Oldfield by hitting his wrist and that Oldfield responded by throwing him into the nearby creek bed. Oldfield testified that Pulver jumped on his back and took him face first to the ground while punching him. Oldfield rolled out from under Pulver and threw Pulver away from him. Anderson saw Pulver land in the creek bed.

Oldfield testified that another person then kicked him in the crotch and began punching him. While Oldfield was being restrained by this "third party," he saw Pulver emerge from the creek bed with a tree branch, about 3 to 4 inches in diameter. Pulver hit Oldfield on the head with the tree branch, breaking it. Oldfield felt excruciating pain and became dizzy. Pulver testified that Oldfield then "kneeled down," and when he tried to get back up, Pulver "tried to hold him in place."

A security guard separated Oldfield from Pulver and the third party while Pulver continued to swing at Oldfield, who was bleeding profusely. Pulver claims no third party was involved. The security guard took Oldfield into the restaurant to rinse the

3

blood from his eyes. An ambulance took Oldfield to the hospital, where he received stitches and diagnostic tests. His primary care physician diagnosed him with a concussion and traumatic brain injury.

## DISCUSSION

### A. *Standard of Review*

Section 527.6 authorizes a person who has suffered harassment to "seek a temporary restraining order and an order after hearing prohibiting harassment." (*Id.*, subd. (a)(1).) The statute defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.*, subd. (b)(3).) At the hearing on a section 527.6 petition, the trial court "shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (*Id.*, subd. (i).)

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence." (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) "'The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to

4

constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.' [Citation.]" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497 (*Harris*).)

### B. Substantial Evidence Supports the Trial Court's Implied Findings

Neither party requested a statement of decision. "Under the doctrine of 'implied findings,' when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence." (*In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549, fn. 11; *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.) "A party who does not request a statement of decision may not argue the trial court failed to make any finding required to support its decision." (*McHugh*, at p. 1248.)

Pulver contends substantial evidence does not support a finding that he committed unlawful violence (§ 527.6, subd. (b)(3)) or that there was a threat of future harm. He claims no evidence of harassment existed at the time of the court hearing.

Under the doctrine of implied findings, we must presume the trial court made all factual findings necessary to support its order. The only question before us is "whether substantial evidence supports [those] implied factual findings." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.) We conclude that it does.

### 1. Unlawful Violence

"'Unlawful violence'" is defined as "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but does not include lawful acts of self-defense or defense of others."

5

(§ 527.6, subd. (b)(7); *Harris, supra,* 248 Cal.App.4th at p. 497.) Pulver, Anderson and Oldfield presented different versions of the Tavern altercation. They all acknowledged, however, that Pulver hit Oldfield over the head with a tree branch, which caused substantial injury. Although Pulver claims he was acting in self-defense or in defense of Anderson, the trial court was entitled to believe Oldfield's version. He testified that the tree branch attack was unprovoked and that he was being battered and restrained by a third party at the time of the attack. Indeed, Pulver admitted that Oldfield did not attack him while he was in the creek bed, and Anderson stated he was turning to leave when he heard Pulver hit Oldfield with the tree branch. This is sufficient evidence of unlawful violence to justify the restraining order. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 ["'The testimony of a witness, even the party himself, may be sufficient'"]; *Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1074 ["[T]he testimony of a single witness, even that of a party, is sufficient to provide substantial evidence to support a finding of fact"].)

### 2. Threat of Future Harm

A prohibitory "injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris, supra,* 248 Cal.App.4th at p. 499; *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 400 (*Russell*).) Accordingly, "a single act of harassment alone cannot justify a restraining order" unless there is a reasonable probability that the harassment will recur. (*Harris,* at p. 499; *Russell,* at p. 404.) In determining whether the record contains substantial evidence of a reasonable probability that an unlawful act will occur in the future, we consider "'the nature of the unlawful violent act evaluated in the light of the relevant surrounding circumstances

6

of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm.'" (*Harris*, at pp. 499-500.)

Since the trial court issued a restraining order, we infer that it impliedly found it was reasonably probable that future harassment would occur. (*Harris*, *supra*, 248 Cal.App.4th at pp. 500-501.) Nothing in the record suggests that the court misunderstood the law in rendering its ruling, and the parties do not argue that it did. This case differs from *Russell*, *supra*, 112 Cal.App.4th 399, on which Pulver relies. There, the court reversed the order granting an injunction because the trial court erroneously believed it was required to issue an injunction based on a single act of past unlawful violence. (*Id.* at p. 404.)

Here, the circumstances surrounding the tree branch attack on Oldfield support the trial court's implied finding that there was a reasonable probability of the harassment recurring in the future. Pulver and Oldfield have known each other for years, have mutual friends and frequent some of the same places. It is therefore likely they will cross paths again. (*Harris*, *supra*, 248 Cal.App.4th at p. 501 [implied finding of likelihood of future harassment supported by likelihood that the restrained person and the protected person would have future interactions].)

Pulver testified that he did not regret attacking Oldfield. Thus, the record supports a reasonable inference that the circumstances that led to the attack – namely, a distinct animus towards Oldfield — continue to exist and demonstrate a reasonable probability of future harassment. This is especially true given the parties' lack of maturity and judgment in dealing with one another.

Finally, Pulver asserts that the restraining order is unwarranted because he had not assaulted or contacted Oldfield

7

since the August 2019 Tavern incident.  The record reflects, however, that a temporary restraining order was in place prohibiting contact.  "[I]t would be 'anomalous to require the protected party to prove further [harassment] occurred in order to justify renewal of [that] original order.  If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's [harassing] conduct just to obtain an extension of that ineffectual order.  Indeed the fact a protective order has proved effective is a good reason for seeking its renewal.  [Citation.]"  (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 91.)

DISPOSITION

The civil harassment restraining order is affirmed.  Oldfield shall recover his costs on appeal.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

8

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Sanger Swysen & Dunkle, Miguel A. Avila, for Defendant and Appellant.

Law Office of Bradford D. Brown, Bradford D. Brown; Legal Aid Foundation of Santa Barbara County, Stacy Robinson, for Plaintiff and Respondent.